GRACE SULLIVAN, Appellee, v. DR. E. E. HARRIS et al., Appellants.

No. 44017.

NOVEMBER 23, 1937.

REHEARING DENIED MARCH 12, 1938.

Clyde McFarlin and Emmert, James & Lindgren, for appellee.

Carl F. Jordan, for appellants.

PARSONS, J.—Plaintiff in this case, Grace Sullivan, brought suit against Dr. and Mrs. E. E. Harris for damages resulting from an automobile accident, alleging in her petition that Mrs. Harris had engaged her to accompany Mrs. Harris in the automobile to Minneapolis, Minnesota, and that she was to help drive the car; that Mrs. Harris orally agreed to pay plaintiff's expenses. That under this agreement plaintiff and Mrs. Harris started to drive to Minneapolis, and on the way an accident happened which resulted in the injuries of which plaintiff complains, which were quite serious.

The petition set forth that the car in which plaintiff was riding belonged to Dr. E. E. Harris, and that Mrs. Harris was driving same with his knowledge and consent; that plaintiff accompanied Mrs. Harris at her request and pursuant to the agreement, for the benefit and company of Mrs. Harris. The petition set out various specifications of negligence of defendant, which were the sole and proximate cause of the accident and plaintiff's injuries, and that no negligence of the plaintiff contributed thereto; and prayed for damages in the sum of $13,819.75.

In an amendment to the petition, plaintiff set forth she was riding with Mrs. Harris, but not as a guest; that she was not in any way in control of the car; that she had not been driving the car at any time prior to the accident; and that Mrs. Harris, prior to and at the time she turned the car across and through a ridge of gravel in the center of the roadway, was operating the car at an excessive rate of speed; that she failed and neglected to slow the speed of the automobile before making the turn; that the car skidded and defendant stepped on the accelerator, causing the car to increase its speed and crash in the bridge abutment.

The answer to the petition as amended was a general denial. Plaintiff filed a second amendment to her petition, setting forth and reiterating that at the time of the alleged accident the plaintiff was not a guest or passenger in said car by invitation and not for hire, but stated she was riding in said car for the definite and tangible benefit of Mrs. Harris, and Dr. Harris.

Substituted answer was filed by defendants amounting simply to a charge of denial.

On these pleadings the parties went to trial. Evidence was introduced on the part of plaintiff, and when she rested the defendants made a motion for directed verdict, said motion setting forth that the evidence showed that the relationship between the parties was that of host and guest, and the plaintiff had not shown she was a nongratuitous passenger of the automobile.

Dr. E. E. Harris filed a separate motion for directed verdict, subject to the joint motion of defendants, and subject to the court's ruling thereon, and moved the court to instruct the jury to return a verdict for the defendants upon the ground the plaintiff failed to establish any of the allegations of negligence set out in her petition; that the court take from the jury the ground of negligence No. 1, referring to excessive speed under the circumstances, there being no evidence to support said claim; that the court take from the jury ground No. 2, in that there is no evidence tending to show the driver of the automobile did not have the car under control; that the record merely shows the driver was faced with a sudden emergency which was not of her own making, that she was driving on the road where she had a right to be, and that the car skidded on the sand and she lost control of her car just before the accident happened. The defendants alleged there was no evidence whatever to sustain the allegation defendant carelessly and negligently swerved said automobile into and over a ridge of loose gravel, and there was no evidence to show such driving over the gravel was negligence. The defendants asked the court to withdraw the fourth ground of negligence, to the effect that defendant negligently stepped on the accelerator, for the reason the record was bare of any evidence tending to sustain such allegation; and as to ground 5, there was no evidence to show that defendant was traveling at a rate of speed toward the bridge that would require her to reduce the speed, and there was no evidence tend-

ing to establish the fact that she was traveling at such rate of speed that would be dangerous to cross the strip of gravel; that as to ground No. 6, there was no evidence to show Mrs. Harris drove her automobile off the graveled portion of the highway and into the bridge; that there was no presumption that the mere happening of such an accident would be the result of negligence. The defendants, and each of them, asked the court to take from the consideration of the jury all the allegations of negligence because it was apparent from the record that the plaintiff had not shown herself to be a nongratuitous guest, and there was no allegation of recklessness in the operation of the automobile made in the petition, nor was any such proof found in the evidence.

During further progress of the trial, the plaintiff withdrew the testimony in the record that Mrs. Harris had stepped on the accelerator. To the withdrawal of this evidence the defendant objected, saying the language of counsel for plaintiff was misconduct; that he should know that no such statement was made by Miss Sullivan; that she didn't mention the accelerator at all; and that for counsel to testify to it and withdraw it, is like driving a nail into a barn door and pulling it out and leaving a hole. The remark of counsel for plaintiff was that he withdrew from the record for the consideration of the jury the testimony of plaintiff as to a conversation she had with Mrs. Harris at the hospital, in which Mrs. Harris had said she stepped on the accelerator.

The defendants then renewed their motions for directed verdict made at the close of plaintiff's testimony, which were overruled, then asked that certain instructions be given to the jury numbered 1 to 12, all of which were refused by the court, to which the defendants excepted.

The court then instructed the jury, which, after considering the case, returned a verdict against defendants for the sum of $3,662.25. The court thereafter, on the 25th of November, 1936, entered judgment in favor of plaintiff for the amount of the verdict with costs, to all of which defendants excepted, and appealed to this court.

In looking over the record in this case we are of the opinion that it must be determined under the provisions of the "guest" statute, section 5026-b1, as follows:

"The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle."

As the record is wholly void of any evidence that the driver was under the influence of intoxicating liquor, or of any recklessness in the operation of the car, if the record discloses that the plaintiff was riding in the car as a guest, or by invitation and not for hire, then the plaintiff cannot recover.

As to whether or not the case is governed by the "guest" statute, in our opinion, depends practically entirely upon the evidence of the plaintiff in the record. While it is true that she claims expressly in her pleadings that she was not riding with Mrs. Harris as a guest, and bases her claims upon specifications of negligence, it is also true that the facts to support her claims must be examined to determine whether or not the plaintiff's right to recover is governed by this statute. And if it is so governed, then the claims of negligence in her petition are not to be considered.

In her petition plaintiff claimed she had an agreement with Mrs. Harris whereby she was to accompany Mrs. Harris to Minneapolis, and that she was to drive the car for Mrs. Harris from time to time on the trip, as requested so to do. If the plaintiff is sustained in this allegation, her case is not governed by the "guest" statute, but is governed by the rule in ordinary cases. An examination of the testimony is therefore necessary.

The plaintiff in her testimony said she became acquainted with Mrs. Harris about three years before the accident; that she was 29 years of age, and Mrs. Harris in the fifties; that she had worked in Grinnell for awhile, and had previously worked in a bank at Brooklyn. Plaintiff testified that while in Grinnell she had occasion to meet Mrs. Harris many times, and that she and her brother resided in the Harris home while Mrs. Harris and the Doctor were in Oklahoma; that she took care of the property at that time. Plaintiff said Mrs. Harris mentioned a trip to Minneapolis while plaintiff and she were on a trip from Brooklyn to Grinnell, a week or so prior to their start for Minneapolis. Mrs. Harris was going there to look for work, nursing being her occupation. In her testimony plaintiff says:

"Mrs. Harris asked me if I thought my brother would care if I went along, and I said, 'No', only I was low on funds and didn't feel I could spare any money on a trip like that. She said it would be very inexpensive on my part, that she would take care of that, that I should help drive and be with her so she would not be alone."

Plaintiff had driven the car for Mrs. Harris occasionally on errands, and for others in Grinnell, but did not have a driver's license. Mrs. Harris said she had business in Des Moines; that she would like to go up there to see about nursing, so the next day Mrs. Harris and plaintiff went to Des Moines, and Mrs. Harris suggested that plaintiff get her driver's license, which she did. After their trip to Des Moines, and about the 14th of September, Mrs. Harris met the plaintiff and asked her if she was ready to go to Minneapolis the following Wednesday, and the plaintiff replied she would go if she could get back by Friday. Plaintiff called Mrs. Harris on Tuesday night to see if she had changed her mind, and Mrs. Harris told plaintiff she would be around after her next morning, and came about 9 o'clock. Mrs. Harris said she would drive until noon, and that plaintiff was to drive after lunch; that Mrs. Harris did not consult plaintiff about the time of starting, or what route they would take in going to Minneapolis. Plaintiff testified that she did none of the driving up to the time of the accident, and was not driving when it happened. She then testified in regard to the accident, saying they had just passed a grader that had thrown some gravel to the center of the road; that Mrs. Harris and plaintiff were riding in a Chevrolet coupé, plaintiff seated on the right-hand side; that the ridge of gravel in the center of the highway was approximately four to six inches deep on a level stretch of gravel; that as they approached the bridge Mrs. Harris said she would cross the gravel, and about the same time she said it she turned into this ridge of gravel to straddle it to cross the bridge at a distance of 100 feet away; that Mrs. Harris was driving about 35 miles an hour; and that as the car hit the gravel it swayed and picked up speed, and it was just a matter of time until they crashed into the bridge, and the next thing plaintiff knew was when she woke up in the hospital at Waverly; plaintiff then described her injuries.

On cross-examination plaintiff testified the trip was begun

on September 18th, and it was talked of about a week before while they were riding in the car between Brooklyn and Grinnell. The automobile belonged to Dr. Harris. It was on this trip that they planned to go to Des Moines the following day, but did not go then.

On further cross-examination plaintiff said it was before they came to Des Moines, while on the trip from Brooklyn to Grinnell, that plaintiff told Mrs. Harris she would go with her; that only the two of them were present. Plaintiff said she did not ask Mrs. Harris to be permitted to go along, but Mrs. Harris asked her if she thought her brother would let her go, and the plaintiff said she could not afford an expensive trip, and Mrs. Harris told her it would not cost her anything. Plaintiff said she had no reason not to go if she could be of any assistance to Mrs. Harris; that she had never seen Minneapolis, and had no objection to seeing it; that they were to leave on Wednesday and be back on Friday; that there was to be no expense to plaintiff on the trip, and she wasn't to buy any gasoline, or have any hotel bill; that they were to stay with some relative of Mrs. Harris.

Plaintiff was then asked: ''The pleasure that you had on the trip, that was all you were getting for it, is that true?'' She answered: ''Just going—I wasn't to be out any hotel bill. Mrs. Harris said we would stay with this relative. It might have been someone that was like an aunt to her. My expenses paid, yes sir. So that as far as I was concerned the trip was absolutely free to me.''

The allegations of the petition on which plaintiff seeks to recover are that Mrs. Harris engaged plaintiff to drive with her to Minneapolis, and to assist and relieve said defendant by driving defendants' automobile at Mrs. Harris's request from time to time on the trip; that Mrs. Harris agreed to pay plaintiff's expenses; that the agreement was oral; that the car belonged to Dr. Harris and Mrs. Harris drove it with his knowledge and consent; that the plaintiff accompanied Mrs. Harris at the request of said defendant and pursuant to said agreement and for the benefit of said defendant, and to assist her by driving said car when requested so to do.

Section 5026-b1 hereinbefore referred to, came into the statutes with the enactment of Chapter 119 of the Forty-second General Assembly, which act was approved March 28, 1927, so

that the decisions of this court under this act do not go back beyond 1927.

Prior to the time this act took effect, owners of automobiles were held liable to a guest even for ordinary negligence which caused injury. This statute then made the owner of automobiles liable to one a guest, or by invitation, and not for hire, only in case the damage was caused as the result of the driver of the vehicle being under the influence of intoxicating liquor or because of his reckless operation of such motor vehicle. So the authorities in Iowa controlling in this case are decisions that have arisen since the enactment of this statute, about ten years ago.

An article in 18 Iowa Law Review, page 78, discusses the question of such liability. In there the rule laid down in Iowa, Michigan, and Connecticut courts, which construed the conduct in question to be something more than simple negligence, held it to be "conduct which indicates an indifference to the consequences of action and constitutes wanton misconduct characterized by willfulness rather than inadvertence."

This article points out that it has been suggested these statutes provide a benefit only to the negligent driver and to the insurance companies, and says:

"Although this may in some measure be true, it must not be overlooked that they seek to limit collusive suits in many of which the insurance company is the real defendant; that they also, as a result thereof, seek to effectuate a decrease in insurance rates which directly mirror the results of verdicts against the insurer; that they encourage 'lifts' without unduly burdening the driver with liability; and that they reflect the spirit in which a gratuitous ride is given."

■■■ At the outset of the consideration of this case we are confronted with the objection of appellee that no proper appeal has been taken. The question is raised that the appeal is defective; that it is from the verdict, and not the judgment of the court. The record as certified to us contains the notice of appeal, which, among other things, says:

"The defendants also appeal * * * from the judgment entered by the clerk of the above court on the 25th of November, 1936, and from all judgments and orders and rulings in any manner adverse to the defendants."

We think that notice of appeal is sufficient. It is an appeal from the judgment and from the verdict, and from all the rulings of the court that are adverse to the defendants. The statement, we think, answers the objections of appellee's attorney.

■■■ Appellee's argument also complains of the appellants' assignment of errors, saying that an omnibus assignment of errors is fatally defective. The assignment of error complained of says:

"The court erred in overruling ground three of appellants' motion for a directed verdict made at the close of plaintiff's evidence; and made at the close of all the evidence, as to the question whether plaintiff had removed herself from under the 'guest' statute, but the record shows that the relationship between the parties was that of host and guest and that the plaintiff has not shown that she was a nongratuitous passenger of the automobile."

Whatever may have been thought to be the rule, we think this is a proper assignment of error, and brings up before this court the question as to whether the district court erred in overruling ground 3 of defendants' motion for a directed verdict.

The appellant also argues that the court erred in overruling ground 4 of defendants' motion for a directed verdict, made at the close of plaintiff's evidence, and renewed at the close of all the evidence, which was as follows:

"The record shows that the plaintiff was riding in said automobile as a gratuitous guest."

So when we get down to a consideration of the case under the testimony, the question which arises for us to determine is whether or not, under the undisputed evidence in this record, taking every statement plaintiff makes to be true, the plaintiff was riding in the car as a guest, or by invitation, under the provisions of section 5026-b1.

There have been cited a great many decisions of the other states, as well as decisions of this court. These statutes differ in the various states. However, we must take the language of our statute in determining this case. If we find under the statutes in this case that the evidence shows plaintiff was riding in the car as a guest, or by invitation, we must find for the defend-

ants, appellants herein. This brings us then to a discussion of the authorities on this point, and this point alone.

There is no evidence whatever that the damage to the plaintiff was the result of the driver being under the influence of intoxicating liquor, or because of the reckless operation of the car. If the plaintiff was riding as a guest or by invitation and not for hire, then she cannot recover, and the motion of the defendant for an instructed verdict should have been sustained.

To take the case out of being governed by the statute, the plaintiff relies upon the evidence introduced in the case, for it cannot be questioned under the record that she was riding in the car on the invitation of Mrs. Harris.

The record shows without question that the plaintiff and Mrs. Harris had been fairly intimate friends for some time, so intimate friends that plaintiff and her brother occupied and took care of the Harris home during a time when the doctor and Mrs. Harris went to Oklahoma, thus saving plaintiff and her brother expenses for living quarters; that from time to time Mrs. Harris made gifts to plaintiff; and the sole basis for plaintiff's claim that there was an oral agreement between her and Mrs. Harris is the conversation between plaintiff and Mrs. Harris while they were riding in the car between Brooklyn and Grinnell. Mrs. Harris mentioned her contemplated trip to Minneapolis and asked plaintiff if she thought her brother would object to her accompanying defendant on this trip; plaintiff said she could not afford any outlay of cash; and Mrs. Harris made the trip possible for plaintiff by telling her she could drive part of the time, and she would not be out any money. Plaintiff had never been to Minneapolis before, she was perfectly willing to go, and Mrs. Harris' suggestion inclined her to accompany defendant on a free trip, without any expense to plaintiff.

We think that to try to torture these arrangements into something that would make plaintiff a passenger for hire, is going a good ways, and clearly would never have been thought of except with the intention of evading the provisions of the ''guest'' statute.

The authorities upon this question are meager. To give the interpretation to the statute contended for by the plaintiff, we think would be to emasculate the statute, to make it nonapplicable in places the legislature intended it to be applicable.

Strictly speaking, it is enlarging the scope of the phrase, "and not for hire", thus practically destroying the statute.

Mrs. Harris was paying all the expenses, seeing that the trip did not cost plaintiff a cent. The suggestion that plaintiff should drive part of the time was not even in the nature of a condition; it wasn't "must", but "should". It didn't amount to the dignity of a contract, wasn't used with that idea in mind, and cannot be tortured into that meaning under the record, even to enable the plaintiff to recover for the damages she claims in this case.

True it is, the courts have in some cases given a construction of the phrase "not for hire" that we think goes the limit. In Bookhart v. Greenlease-Lied Motor Co., 215 Iowa 8, 11, 244 N. W. 721, 724, 82 A. L. R. 1359, plaintiff was a prospective buyer of an automobile, and at the invitation of the salesman accepted a ride for the purpose of ascertaining the qualities of the car, and it was held he was a "passenger for hire" and not a guest within the contemplation of the statute regarding the liability of the owner or operator of the motor vehicle. In that case the court said:

" 'As the use of automobiles became almost universal, the proverbial ingratitude of the dog that bites the hand that feeds him, found a counterpart in the many cases that arose, where generous drivers, having offered rides to guests, later found themselves defendants in cases that often turned upon close questions of negligence. Undoubtedly, the legislature, in adopting this act, reflected a certain natural feeling as to the injustice of such a situation. *Neither this feeling nor the reasons therefor apply to a situation arising out of an ordinary business transaction, such as the efforts of a dealer to sell an automobile to a customer'.*"

This Bookhart case quoted approvingly from Crawford v. Foster, 110 Cal. App. 81, 293 Pac. 841, plaintiff having been injured while riding in an automobile being demonstrated to plaintiff as a prospective purchaser. In that case the court said the only question involved was whether the plaintiff was a guest within the meaning of the California statute. The court held the plaintiff was not a guest, and said:

"It will be noted that the statute defines the meaning of

the term guest 'as being a person who accepts a ride in any vehicle without giving compensation therefor.' The court held that a guest within the meaning of said statute is one who accepts the driver's hospitality and takes a ride for his pleasure or business without making any return or conferring any benefit upon the driver.''

In Knutson v. Lurie, 217 Iowa 192, 195, 251 N. W. 147, 149, the defendant and his wife lived in northwest Fort Dodge. They had in their employ a domestic (plaintiff) who was to keep house, get the meals, and take care of the children for defendants. Plaintiff had left a pair of shoes at a shop to be repaired. At this time Mrs. Lurie was entertaining guests, who were staying part of the time at her home. As she was going to take her guests to the theatre, the maid asked Mrs. Lurie if she would pick up her shoes at the repair shop. But she forgot them, and after dinner was served, Mrs. Lurie, her guests, the children, and the maid got into the car and went downtown for the shoes, Mrs. Lurie driving. The maid alighted from the car, obtained the shoes, paid for them, and re-entered the automobile, and Mrs. Lurie proceeded home, but on the way another car collided with the Lurie car, and the maid was severely injured. Suit was commenced for the maid by her next friend. Motion for directed verdict was made by the defense, on the ground that the matter came under section 5026-b1, claiming that the maid was not a guest in the car. The court says:

''One may be a passenger in an automobile without being a guest, a mere passenger by invitation, or a passenger for hire in the legal sense of the word. There are, in fact, a multitude of persons riding in cars daily who are not guests, passengers by mere invitation, or passengers for hire within the legal meaning of that term. A person riding in an automobile may be there because of the relationship of master and servant existing between him and the owner. In other instances, the rider in an automobile may be there (without the relationship of master and servant) * * * for the mutual, definite, and tangible benefit of the owner or operator on the one hand, and of himself on the other.'' The opinion further says:

''When the legislature of Iowa used the phrase in Section 5026-b1, * * * 'as a guest or by invitation and not for hire', its

evident attempt was to exclude recovery by a guest or a mere invitee except for the reckless operation of the automobile. The use of the phrase 'and not for hire' was merely to aid in the understanding of the meaning of the word 'guest' and of the phrase 'by invitation'. By using those words and phrases, the legislature did not intend to include all persons who might from time to time ride in an automobile, as before explained. It is evident that the intent of the legislature, therefore, was to recognize nongratuitous riders in an automobile, * * *. Through the legislation, a safeguard against the prevalent claims for damages by guests or mere invitees was placed around the owner and operator of the car. Although, in the transportation of the guest or the mere invitee, no fare of any kind was asked by the owner or operator, yet the guest and invitee, without gratitude, frequently commence suit on every conceivable charge of negligence.''

The opinion then goes on to point out the relationship which existed between plaintiff and defendants, that of maid to look after the work for the defendants; that by taking the maid in the car after her shoes she could be more quickly returned to her work than if she went by streetcar or bus. So it appears that the benefit from the trip was mutual.

Porter v. Decker, 222 Iowa 1109, 270 N. W. 897, 899, so far as it touches this question, turns largely upon the question of pleading, for the opinion says, at page 1114:

''It seems elementary that only such matters can be submitted to a jury as are contained in the pleadings and as to which evidence has been presented upon the trial of the case, and we are unable to see why the portion of the instruction concerning which complaint is here made did not contain a violation of this simple rule.'' And held that this being confusing to the jury, it was improper.

■■■ The appellee also makes the point that statutes in derogation of the common law must be strictly construed, and very properly cites no Iowa cases on this, but does cite two Connecticut cases. Counsel must have overlooked section 64 of the Code, which has been the law of the state for some time. That section reads:

''The rule of the common law, that statutes in derogation

358

thereof are to be strictly construed, has no application to this code. Its provisions and all proceedings under it shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice.''

The aim of the statute involved was to protect automobile drivers and owners from claims made by persons who were riding in the motor vehicle as a guest, or by invitation and not for hire, except when the driver was under the influence of intoxicating liquor or because of his careless operation of the motor vehicle. That was the purpose the legislature had in mind. The statutes should be liberally construed to effectuate this purpose, and not construed as the rule would be without section 64. It was not the intent of the legislature, in the light of section 64, to open up an avenue by which the effect of the guest statute could be nullified because being in derogation of the common law. In re Estate of Van Vechten, 218 Iowa 229, 251 N. W. 729.

In Clendenning v. Simerman, 220 Iowa 739, 743, 263 N. W. 248, 250, a young lady riding in a car was injured in an accident and died as the result of such injuries. The driver of the automobile was a wholesale distributor of beer. The daughter of his employer, one Palmer, wished to go to Des Moines to do some shopping, and she made arrangements with her father to have Simerman take her. Palmer told Simerman to get his car filled up with gasoline and charge it to him. Miss Clendenning, a friend of Miss Palmer, accompanied her and Simerman on this trip, and on their return home, after dark, as they were passing a broken-down coal truck defendant's automobile struck the box of the truck, causing an accident which injured Miss Clendenning, resulting in her death. Her administrator brought suit for her death, under an ordinary action in tort. The case was dismissed by the district court on motion that the decedent was a guest and the administrator could not collect for damages; appeal was taken, and the court affirmed the lower court.

The court said: .

''The sole question is whether or not Miss Clendenning was a guest. If she was a guest, then, under the statutes of this state, her estate is not entitled to recover and the lower court was right in directing a verdict. The appellant sues upon the theory that she was not a guest and bottoms his right to recover upon the negligence of the appellee.''

The opinion further says:

" 'When the legislature of Iowa used the phrase in section 5026-b1, * * * "as a guest or by invitation and not for hire", its evident attempt was to exclude recovery by a guest or a mere invitee except for the reckless operation of the automobile. * * * By using those words and phrases, the legislature did not intend to include all persons who might from time to time ride in an automobile, as before explained. It is evident that the intent of the legislature, therefore, was to recognize nongratuitous riders in an automobile, as well as a guest and a mere invitee.' "

So in the consideration of all these matters we think it sums up to this: that the plaintiff and defendant were personal friends; the companionship of each was agreeable to the other; there was no thought of hire of any kind. The defendant merely asked the plaintiff if she would like to go to Minneapolis with her, and the plaintiff was willing to go. It is true defendant said plaintiff should do some of the driving. Plaintiff was a competent driver, so was the defendant; they were frequently in the company of each other, because it was agreeable to each; and the simple statement that plaintiff should do some of the driving, and plaintiff assented to it, does not make a contract, and does not take this case from under the guest statute. For these reasons the case is reversed.—Reversed.

HAMILTON, C. J., and MITCHELL, SAGER, ANDERSON, STIGER, and DONEGAN, JJ., concur.