## AGNES M. BURT v. EULALIA H. RICHARDSON.

87 N. W. (2d) 833.

January 24, 1958—No. 37,183.

*Durham, Swanson & Lasley,* for appellant.

*William H. DeParcq, Donald T. Barbeau,* and *Robert N. Stone,* for respondent.

MAGNEY, COMMISSIONER.

Defendant, Eulalia H. Richardson, appeals from a judgment entered against her.

One evening in the spring of 1955, plaintiff, Agnes M. Burt, and her husband, Alfred P. Burt, met defendant and her husband, George H. Richardson, at a club. The couples had been friends for years. Plans for the next winter's vacation came up in the conversation. The Burts had planned to fly to Florida. The Richardsons were also planning a Florida vacation. Both couples were intending to leave about the same time. According to Mr. Burt, the Burts said that they intended to fly, and the Richardsons said that they intended to drive and that, as they were driving alone and had plenty of room, they would like the Burts to go with them on a share-the-automobile-expense basis. They discussed the mutual advantages of traveling together, including the saving in expenses; also that the Burts could share some of the driving, which would be an advantage to both couples. As they were

friends and the Burts enjoyed the company of the Richardsons, the invitation was accepted. According to Mr. Richardson, the Richardsons also had intended to fly but that, when the Burts said that they had not seen the country before and would like to drive, the Richardsons agreed to drive and to take the Burts with them. This variance in testimony seems immaterial.

During the trip Mr. Burt did some of the driving, about 600 miles. While in Florida the four decided to take a side trip to Cuba, so they took an American Express all-expense tour, which included everything but meals. The Burts paid for this tour out of their joint bank account. The total cost of the tickets was $342.40—$171.20 for each couple. Mr. Richardson kept an itemized statement of the automobile expense of the trip. It totaled $248.69 and included $106.57 for gas and oil, $82.12 for a broken windshield, and the balance for a new tire to replace one completely damaged. The Burts' share was $124.35.

On the return trip, the accident involved in this action occurred near Osage, Iowa. Plaintiff was injured and recovered the judgment appealed from.

■ The only issue on this appeal is whether plaintiff was a guest "for hire" under the so-called Iowa Guest Statute. That statute, in so far as it is material here, is as follows:

"The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire * * *." Code of Iowa 1954, § 321.494.

Since the accident occurred in the State of Iowa, the law of that state governs. Sharp v. Johnson, 248 Minn. 518, 80 N. W. (2d) 650. The "guest" statute of a foreign jurisdiction has been considered by this court in two decisions, neither of which is of any assistance here.

In Teders v. Rothermel, 205 Minn. 470, 286 N. W. 353, the accident happened in the State of Florida, which has a guest statute. This court held that plaintiff, under an agreement to share the expenses with three other occupants of the automobile on a trip to Florida and return, was not a passenger without payment for such transportation. The Florida court passed upon this question later on and arrived at a

contrary result. McDougald v. Couey, 150 Fla. 748, 9 So. (2d) 187.

In Goldberg v. Cook, 206 Minn. 450, 289 N. W. 512, the guest statute of the State of Texas was involved. As the plaintiff's transportation was for defendant's benefit, the court distinguished it from the ordinary case of sharing expenses and permitted recovery. In that case, plaintiff's purpose in making the trip was to assist the defendant with the children.

■ In Sullivan v. Harris, 224 Iowa 345, 276 N. W. 88, the plaintiff was asked to ride with defendant to Minneapolis, defendant to pay all expenses. The court said (224 Iowa 349, 276 N. W. 90):

"In her petition plaintiff claimed she had an agreement with Mrs. Harris whereby she was to accompany Mrs. Harris to Minneapolis, and that she was to drive the car for Mrs. Harris from time to time on the trip, as requested so to do. If the plaintiff is sustained in this allegation, her case is not governed by the 'guest' statute, but is governed by the rule in ordinary cases. An examination of the testimony is therefore necessary."

The court commented on the testimony and then said (224 Iowa 359, 276 N. W. 95):

"* * * the simple statement that plaintiff should do some of the driving, and plaintiff assented to it, does not make a contract, and does not take this case from under the guest statute."

It also said (224 Iowa 355, 276 N. W. 93):

"* * * The suggestion that plaintiff should drive part of the time was not even in the nature of a condition; it wasn't 'must', but 'should'. It didn't amount to the dignity of a contract, wasn't used with that idea in mind, and cannot be tortured into that meaning under the record, even to enable the plaintiff to recover for the damages she claims in this case."

The understanding between the Burts and the Richardsons relative to the driving of the car went no further than to say that, if the parties drove to Florida together, the Burts "could share some of the driving," and if, under the facts in the Sullivan case, the arrangement did not "amount to the dignity of a contract," as the court put it,

the facts in this case surely cannot approach that dignity either.

The only other case involving driving assistance is Porter v. Decker, 222 Iowa 1109, 270 N. W. 897. Plaintiff in that case alleged that he was to act as a relief driver and to help load and unload defendant's truck. The court held that this did not remove the plaintiff from the guest statute provisions because it was merely a courtesy rather than employment. Thus, under the Iowa statute, the understanding between the parties under the facts here as to the sharing of the driving would not be a benefit constituting compensation so as to take the case out of the provisions of the Iowa Guest Statute.

In Doherty v. Edwards, 227 Iowa 1264, 1268, 290 N. W. 672, 674, the court said:

"* * * Ordinarily where the only benefits conferred upon the person extending the invitation are those incidental to hospitality, companionship or society, the passenger is held to be a guest. Where the passenger is a social guest or casual invitee he is usually regarded as a guest even though he may contribute something toward the expenses of the journey and may be expected to operate the car on part of the trip. McCornack v. Pickerell, 225 Iowa 1076, 283 N. W. 899; Sullivan v. Harris, 224 Iowa 345, 276 N. W. 88; Vance v. Grohe, 223 Iowa 1109, 274 N. W. 902; Clendenning v. Simerman, 220 Iowa 739, 263 N. W. 248."

■ In addition to the statement in Doherty v. Edwards, *supra,* Clendenning v. Simerman, *supra,* also holds that one riding in an automobile, who confers no benefit on the driver other than the mere pleasure of his company, is a "guest."

■ Under the law of Iowa, ordinarily the sharing of automobile expenses does not render the person so contributing a passenger for hire. In McCornack v. Pickerell, 225 Iowa 1076, 1081, 283 N. W. 899, 901, the rule is stated:

"It has frequently been held that the mere division of expenses among members of a party riding in an automobile does not render the person so contributing a passenger for hire. It has so been held by our own court and by the courts of other jurisdictions."

Thus, it is obvious that, under the Iowa decisions, the pleasure of

the other's company, the sharing of the driving under facts as we have them here, and the ordinary sharing of automobile expenses are not benefits constituting compensation. Such items do not destroy the host and guest relationship under the Iowa law.

In several Iowa cases, the rider was held to have been a passenger and not a guest. Bookhart v. Greenlease-Lied Motor Co. 215 Iowa 8, 244 N. W. 721, 82 A. L. R. 1359; Knutson v. Lurie, 217 Iowa 192, 251 N. W. 147; Doherty v. Edwards, 227 Iowa 1264, 290 N. W. 672; Thuente v. Hart Motors, 234 Iowa 1294, 15 N. W. (2d) 622; Wittrock v. Newcom, 224 Iowa 925, 277 N. W. 286; Stenberg v. Buckley, 245 Iowa 622, 61 N. W. (2d) 452. As the facts in those cases differ so materially from the facts here, a discussion of those cases does not seem profitable.

The latest Iowa case is Haas v. Owens, 248 Iowa 781, 81 N. W. (2d) 654. Plaintiff and defendant were registered nurses and members of the State Association of Nurses, which had scheduled a polio workshop in Des Moines. Plaintiff asked defendant if she might ride with her, and defendant consented. While en route plaintiff was injured. It was plaintiff's claim that she agreed with defendant, prior to the start of the trip, that she would pay for the transportation and that defendant said "we'll settle later." There was no agreement as to the amount. After plaintiff returned home from the hospital, she asked defendant how much she owed and she said: "Not much, seventy-five cents." This was paid. Defendant stated that plaintiff offered to contribute to the gas and oil and was told that, if she wanted to do so, she would be informed as to the amount later. It appears that the seventy-five cents represented a four-way split of the gas bill. The court said (248 Iowa 784, 81 N. W. [2d] 656):

"* * * Beyond the evidence of this seventy-five cent payment, the record is silent as to any definite and tangible benefit received by the defendant, due to plaintiff's presence in the car, other than her companionship. Neither is there any evidence showing a mutual definite and tangible benefit resulting to defendant and the plaintiff, from plaintiff's presence. Nor do we think the additional payment of seventy-five cents is such a substantial or tangible benefit as is contemplated by the statute and our decisions thereon. [Citing cases.]"

■ There is, however, one distinguishing feature in the instant case in connection with the sharing-of-the-automobile-expense item. We must determine its materiality. When the parties had their understanding as to the Florida trip, it was agreed that the Burts would accompany the Richardsons on a share-the-automobile-expense basis. The total amount of such expense, according to the record Mr. Richardson kept, was $248.69. Usually such an arrangement consists of the sharing of the cost of gas and oil only. But here it seems to have been mutually understood to include additional expenses, and a new windshield and a new tire were included, items which would not be used up on the trip. The Burts paid $342.40 for the tickets that took the four of them to Cuba and back by air. This trip was not in the minds of the parties when the initial arrangements were made. There is nothing in the record as to any understanding to share the expenses of the Cuban trip or that the Burts were taking the Richardsons with them as their guests without any financial obligation on the part of the Richardsons. Apparently the first time the question of the Cuban-trip expense arose was after the accident. The only testimony in the case as to how the parties adjusted the matter of expenses is that given by Mr. Burt as follows:

"Q. And as a result of you paying for that trip [the Cuban trip], did you and Mr. Richardson more or less arrive at the conclusion that your paying for the trip from Florida to Havana constituted sufficient expenditures so you didn't need an accounting on the gas, oil and so forth?

"A. Well, I believe that is so, because after the accident—Mr. Richardson kept a record of the expenses on the trip—and after the accident everything was upset, and I asked Mr. Richardson to figure out what I owed him, and he said, 'I don't think you owe me anything after the trip to Cuba.' He said, 'I think that will amply cover your share of the expenses.'

"Q. In other words, the trips to Cuba offset what you owed him for gas and oil?

"A. Yes."

It was thus Mr. Richardson's suggestion that the cost of the Cuban

transportation should be applied on his car expense, and, in doing so, he said that he thought that it would "amply cover your share of the expenses," the inference being that the cost of the Cuban transportation exceeded the car expense. This new arrangement supplanted the one originally made when the Florida trip was planned. Apparently the parties intended that the one expense would offset the other. But, whatever the parties intended, actually the Richardsons benefited to the extent of $46.85, their half share of the cost of the Cuban trip above one-half of the total car expense. So, if the intention of the parties was that the Cuban expense would offset the car expense, and there can be no question that such was their intention, still the fact remains that the Richardsons received a benefit to the extent of $46.85. This must be considered a definite, substantial, and tangible benefit. In Haas v. Owens, *supra,* the Iowa court did not consider the payment of seventy-five cents a substantial or tangible benefit to the car owner. In the instant case, the car owner received $342.40 worth of transportation in return for $248.69 cash car expenditure. If the car owner would have received the $46.85 in cash, such sum certainly would be considered a substantial or tangible benefit to such owner. It is apparent that the car owner did not consider the Cuban trip a gift since he himself suggested that it be applied on the car expense. If that part of the Cuban expense which equalled the car expense is not to be considered a gratuity but a payment, no reason is suggested why the balance of $46.85 should be considered a gratuity if that should make a difference. The two sums represented payments, and in that exchange of payments the car owner benefited to the extent of the figure mentioned above, and in our opinion such sum was a substantial and tangible benefit constituting compensation.

At the close of the testimony, plaintiff claimed that the sharing of the expenses took the case out of the Iowa Guest Statute. Counsel for both sides agreed that there was no fact issue for the jury—that it was a question of law—and the court ruled that plaintiff was a passenger for hire. Whether the court based its ruling on the $46.85 item, the record does not disclose.

Judgment affirmed.

KNUTSON, JUSTICE (dissenting).

I am unable to agree with this decision for a number of reasons. In the first place, the case is now being disposed of on a theory that was never mentioned at the trial and never considered by the trial court. The only claim made by plaintiff at the time of the trial, and the one upon which the trial court based its decision that plaintiff was a passenger for hire, is found in plaintiff's motion at the close of the case, where plaintiff's counsel said:

"* * * the plaintiffs claim the sharing of expenses takes them out of the Guest Statute, * * *. It appears as a matter of law the Court should rule that the Burts are out from under the Guest Statute because they are passengers for hire, * * *."

After listening to arguments of counsel, the court said: "I will rule that they are passengers for hire."

In the next place, the decision is based on an inference that to me seems wholly inconsistent with the evidence and directly contrary to the understanding and intention of the parties. The following direct testimony of Mr. Burt is the only evidence in the case furnishing any help in determining what the parties did:

"Q. And as a result of you paying for that trip, did you and Mr. Richardson more or less arrive at the conclusion that your paying for the trip from Florida to Havana constituted sufficient expenditures *so you didn't need an accounting on the gas, oil and so forth?*

"A. Well, I believe that is so, because after the accident—Mr. Richardson kept a record of the expenses on the trip—and after the accident everything was upset, and I asked Mr. Richardson to figure out what I owed him, and he said, 'I don't think you owe me anything after the trip to Cuba.' He said, 'I think that will amply cover your share of the expenses.'

"Q. *In other words, the trip to Cuba offset what you owed him for gas and oil?*

"A. *Yes.*" (Italics supplied.)

It seems to me that the only conclusion that can be drawn from this testimony is that one payment offset the other and that it was not necessary to go into a more detailed account. If plaintiff had

claimed that they had overpaid defendant and that such overpayment would take them out of the guest statute, the evidence might well have been different. No such claim was made. From the testimony it is difficult to see how any conclusion can be drawn other than that all parties believed that defendant had been paid for plaintiff's share of the expenses and nothing more. Plaintiff's entire case rested upon the proposition that payment of the expenses under the circumstances of this case took them out of the Iowa Guest Statute. The above opinion holds against them on that proposition but finds another reason, not advanced by the parties, for affirming the decision.

Even if it could be said that the expenses of the Cuban trip did slightly exceed the expense of the automobile trip, there is still another reason why it could not change plaintiff's status from a guest to a passenger for hire. The Cuban trip had nothing to do with the automobile trip. It was entirely separate from it. The parties traveled by air from Florida to Cuba. It was not within the contemplation of the parties when the trip started. As I understand the Iowa cases, a benefit coming to the owner of a car, in order to take a passenger out of the guest statute, must be a benefit arising from the passenger's presence in the automobile, not a benefit arising out of some other transaction. If defendant received any benefit here in excess of plaintiff's share of the expenses, it was by virtue of payment of expenses on a side trip which had nothing to do with the automobile trip. If there was any overpayment, none of the parties have ever claimed that such extra amount was paid to defendant for the privilege of riding in the automobile. For these reasons, it appears to me that the decision of the trial court is contrary to the Iowa decisions and for that reason I respectfully dissent.

FRANK T. GALLAGHER, JUSTICE (dissenting).
I concur in the dissent of Mr. Justice Knutson.